STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

# REPORT OF PERFORMANCE
# FOR PROBATIONARY EMPLOYEE

STD. 636 (REV 8/2002)

- [✓] FIRST
- [ ] SECOND
- [ ] THIRD

| NAME (Last) | First | Initial | SOCIAL SECURITY NUMBER | REPORT DATE |
|---|---|---|---|---|
| Chirstopher | Wadsworth | | [redacted] | 05/16/14 |

| CIVIL SERVICE TITLE | POSITION NUMBER | DATE PROBATION ENDS |
|---|---|---|
| Chief Psychiatrist | 098-220-9758-503 | 09/19/14 |

| DEPARTMENT NAME | DIVISION / UNIT | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| CDCR | MHSDS | San Quentin |

**YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS**

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| 1. SKILL—Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | | ✓ | |
| 2. KNOWLEDGE—Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | | ✓ | |
| 3. WORK HABITS—Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | ✓ | |
| 4. RELATIONSHIPS WITH PEOPLE—Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | ✓ | |
| 5. LEARNING ABILITY—Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | | ✓ | |
| 6. ATTITUDE—Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | ✓ | |
| 7. COMMUNICATION—Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | | ✓ | |
| 8. ABILITY AS SUPERVISOR—Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | | ✓ | |
| 9. ADMINISTRATIVE ABILITY—Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | | ✓ | |
| 10. FACTORS NOT LISTED ABOVE (Use additional sheets if more space is needed.) | | | ✓ | |
| OVERALL RATING—The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | | ✓ | |

COMMENTS TO EMPLOYEE—(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).

As your first Report of Performance for Probationary Employee evaluation was not issued to you on January 19, 2014, by default it is deemed to be "standard" on all Qualification Factors.

| Rater discussed report with employee | [✓] YES   [ ] NO |
|---|---|

I RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS
(To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.)   [ ] YES   [✓] NO

| RATER'S SIGNATURE | TITLE | DATE SIGNED |
|---|---|---|
| [signed] | Chief of Mental Health | 05/16/14 |

*In signing this report I do not necessarily agree with the conclusions of the rater.*

| EMPLOYEE'S SIGNATURE | DATE SIGNED | [ ] I would like to discuss this report with the reviewing officer. |
|---|---|---|
| | | |

*I concur in the ratings given by the rater. I have made no change in this report.*

| REVIEWING OFFICER'S SIGNATURE | DATE SIGNED | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
|---|---|---|
| Andrew W Leeni | 5·16·14 | |

DISTRIBUTION Copies:   1 — Departmental Files   2 — Employee   3 — Supervisor   4 — Miscellaneous

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE**
**FOR PROBATIONARY EMPLOYEE**

STD. 636 (REV 8/2002) (REVERSE PAGE 2)

# INFORMATION ON PROBATIONARY REPORTS OF PERFORMANCE

1. The Report of Performance system is based on the principle that an employee should be kept informed of his/her supervisor's evaluation of his/her work. When a person is appointed as a probationary employee he/she is considered to be capable of Standard performance, and is presumed to have an initial overall performance rating of Standard. Thereafter, changes in his/her level of performance are shown by the Report of Performance. A probationary period of not less than six months or more than one year is required before permanent civil service status is attained; and reports must be prepared at the end of each one-third portion of the period. Additional reports may be prepared at any time during the probationary period.

2. The purpose of the Report of Performance is to help the supervisor and employee measure how well the employee is adapting to his/her job, and to provide a tool for guidance in training assignments, and granting of permanent civil service status.

3. The qualifications of each probationary employee, as demonstrated by his/her work performance, are rated on not less than five of the factors listed. Factors that do not apply are not rated. For example, Administrative Ability is not rated if the position does not have regular administrative responsibility. Any important qualification factors not listed in items 1 through 9 are described by the Rater and rated under item 10.

4. To indicate the rating on any factor, an "X" mark is placed in the appropriate rating column. (The location of the "X" in the rating column may be varied to give the employee a more precise indication as to his/her qualifications. When this is done, the farther the "X" is placed to the right the stronger the rating.)

5. If some significant aspect of the work is above or below the level indicated by the factor ratings, this may be pointed out by a statement in Comments to Employee. Where feasible, comments will also include suggestions as to how performance can be improved and suggestions regarding desirable training.

6. When the necessary skills or knowledge to do thoroughly satisfactory work have to be acquired on the job, a rating of Improvement Needed on factors 1 o 2 on the First and Second report does not definitely indicate progress is no satisfactory unless a statement as to unsatisfactory progress is made i Comments to Employee. On the Final Report, any rating of Improvemer Needed indicates progress has not been satisfactory.

7. Any rating of Unacceptable or an overall rating of Improvement Neede indicates progress has been unsatisfactory.

8. The Rater will discuss the report with the employee and give the employee copy. In signing the report, the employee merely acknowledges that he/she ha seen it. His/her signature does not indicate agreement. If he/she wishes to add written statement concerning any part of the report, he/she uses the Comment space. His/her comments are not considered a formal appeal from the report.

9. After the report is prepared, it is considered by the Reviewing Officer. If th Rater and Reviewing Officer do not reach agreement on the report, it is referre to the appointing authority or his/her representative. If any changes are made the report is not valid unless they are reported to the employee and recorded o his/her copy.

10. It is the duty of the appointing authority to reject any probationary employe who fails to demonstrate fitness for the position. In this event the appointin authority must give the employee written notice as prescribed in Governmen Code Section 19173. A Final Report of Performance may be prepared at tha time.

## DEFINITIONS OF RATINGS

**OUTSTANDING**– Performance on the job indicates qualifications are definitely superior—performance by the end of the probationary period can be expected to be well above the standard required of a competent permanent employee in that job. (If the overall rating is Outstanding, the Rater must give a written statement of factual substantiation for the rating. General statements such as "Outstanding in skill and knowledge" are not acceptable.)

**STANDARD**– Performance on the job indicates qualifications are thoroughly satisfactory—performance by the end of the probationary period can be expected to be up to, or somewhat above, the standard required of a competent permanent employee in that job.

**IMPROVEMENT NEEDED**– Performance on the job indicates qualification are somewhat inadequate—to reach the standard required of a competer permanent employee by the end of the probationary period, greater effort o training is needed.

**UNACCEPTABLE**– Performance on the job indicates qualifications are ver inadequate—special training, reassignment, or rejection may be advisable. (An factor or overall rating of Unacceptable must be substantiated by the Rater' written statement of specific reasons for each such rating.)

**THESE DEFINITIONS MUST BE USED IN MARKING THE PERFORMANCE FACTORS**
**AND IN ARRIVING AT THE OVERALL RATING.**

## APPEAL PROCEDURE

If the employee believes his/her rating is improper, he/she should discuss it with the Rater. If still not satisfied, he/she should sign the report and place an "X" in the space provided by his/her signature to indicate he/she wishes to discuss the report with the Reviewing Officer. An employee who wishes consideration in addition to the review by the Reviewing Officer and Rater should follow the grievance procedure of his/her agency.

An appeal to the Personnel Board for a formal hearing on a Report of Performance can be made only on the basis that it has been used to abuse, harass, or discriminate against the employee and only after the departmental grievance procedure has beer exhausted. Such appeal must be filed with the Personnel Board in writing within thirty days after the employee receives the departmental decision.

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION
**REPORT OF PERFORMANCE**
**FOR PROBATIONARY EMPLOYEE**

STD. 636 (REV 8/2002) (REVERSE PAGE 4)

# RATING THE QUALIFICATIONS OF A PROBATIONARY EMPLOYEE
## (INFORMATION FOR RATERS, REVIEWERS, AND APPOINTING AUTHORITIES)

## PURPOSE OF THE RATING

This is a progress report to the employee. In addition to letting the employee know how well he/she is doing his/her job, and helping the employee orient his/her efforts, it should be helpful to supervisors in:

(a) Making careful analysis of the employee's work.

(b) Making work assignments that will be to the best advantage of the employee and the organization.

(c) Determining the additional training needs of the employee.

(d) Determining whether the employee should be granted permanent status.

## DOING THE RATING

Soon after he/she comes to work, the probationer should be given a sample copy of this report and told of the standards of performance upon which his/her qualifications will be rated.

A Report of Performance may be prepared at any time during the probationary period. A report must be prepared for each probationary employee within ten days after the end of each one-third portion of his/her probationary period. If the employee is rejected during probation a final report may be prepared at that time.

Each department designates the Raters. Usually the immediate supervisor does the rating. Two or more supervisors may prepare the report together. All Raters sign the report. The Rater gives the employee his/her copy, and discusses it with the employee.

Only the qualification factors necessary for success in doing the duties of the position are rated. At least five factors must be rated. The examples listed after each factor are for illustration and explanation. They do not include every element that may properly be considered in rating the factor.

A person appointed with civil service status is presumed to have an initial overall performance rating of Standard. Thereafter, changes in his/her level of performance are shown by the Report of Performance. Probationary employees are rated on those factors that are of greatest significance in predicting success in the work, and on progress toward fully competent performance.

The ratings are defined as follows:

**OUTSTANDING**–Performance on the job indicates qualifications are definitely superior–performance by the end of the probationary period can be expected to be well above the standard required of a competent permanent employee in that job. (If the overall rating is Outstanding, the Rater must give a written statement of factual substantiation for the rating. General statements such as "Outstanding in skill and knowledge" are not acceptable.)

**STANDARD**–Performance on the job indicates qualifications are thoroughly satisfactory–performance by the end of the probationary period can be expected to be up to, or somewhat above, the standard required of a competent permanent employee in that job.

**IMPROVEMENT NEEDED**–Performance on the job indicates qualifications are somewhat inadequate–to reach the standard required of a competent permanent employee by the end of the probationary period, greater effort or training is needed.

**UNACCEPTABLE**–Performance on the job indicates qualifications are very inadequate–special training, reassignment, or rejection may be advisable. (Any factor or overall rating of Unacceptable must be substantiated by the Rater's written statement of specific reasons for each such rating.)

**COMMENTS**–Minimum requirements as to the use of comments to support Outstanding or Unacceptable ratings are explained above. Agencies may establish additional requirements. Comments should be made on any aspect of the employee's performance which has a significant influence on his/her effectiveness. Suggestions which may help the employee improve his/her performance should be made. They should be specific, and not merely refer to previous discussion or comments on previous reports.

**EMPLOYEE DISCUSSION**–Constructive discussion with an employee regarding his/her work performance and progress is an essential element of good supervision. The Report of Performance interview provides an excellent opportunity to review with the employee problems relating to his/her work, answer his/her questions, explain departmental or unit objectives or plans, and to develop better supervisor-employer understanding.

## THE REVIEWING OFFICER

The responsibilities of the Reviewing Officer include:

1. Keeping uniformity in the application of standards by the Raters under his/her direction.

2. Securing corrective action when bias or a misinterpretation of rating standards is evidenced in ratings.

3. Making sure reports are thoroughly and promptly prepared.

4. Discussing the report with the Rater or employee when requested, or otherwise appropriate.

5. Checking the statements made in support of Unacceptable or Outstanding to see that the reasons are specific, substantial and accurate.

The Reviewing Officer may discuss a report with the Rater and employee, but cannot change the report. If the Reviewing Officer recommends changes with which the Rater agrees, the Rater either makes the changes or prepares a new report. The changes are not valid unless the employee is notified and the changes are re-recorded on the employee's copy of the report.

If the Rater and the Reviewing Officer do not reach agreement, the matter is forwarded to the head of the department for decision. The department head may designate a different Rater and/or Reviewing Officer. The official report as finally effective must be signed by at least two persons who have been designated officially as the "Rater" and "Reviewing Officer," and who agree on all statements and ratings made in the report.

The Reviewing Officer signs the reports in which he/she concurs. All signed reports are transmitted as directed by the department. General reviews are made by administrative officials to see whether results in different units of the agency are logical and consistent.

## FILING OF REPORTS

Each agency files reports within the agency in the manner prescribed by the appointing authority of that agency. A report should be retained for three years if there is indication of punitive action.

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE FOR PROBATIONARY EMPLOYEE**

STD. 636 (REV 8/2002)

RATER — *Before marking this report, read instructions on the back.*

- [ ] FIRST
- [x] SECOND
- [ ] THIRD

| NAME (Last) | First | Initial | SOCIAL SECURITY NUMBER | REPORT DATE |
|---|---|---|---|---|
| Chirstopher | Wadsworth | | [redacted] | 05/16/14 |

| CIVIL SERVICE TITLE | POSITION NUMBER | DATE PROBATION ENDS |
|---|---|---|
| Chief Psychiatrist | 098-220-9758-503 | 09/19/14 |

| DEPARTMENT NAME | DIVISION / UNIT | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| CDCR | MHSDS | San Quentin |

**YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS**

RATINGS ARE INDICATED BY "X" MARKS

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| 1. **SKILL**–Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | ✓ | | |
| 2. **KNOWLEDGE**–Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | ✓ | | |
| 3. **WORK HABITS**–Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | ✓ | |
| 4. **RELATIONSHIPS WITH PEOPLE**–Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | ✓ | |
| 5. **LEARNING ABILITY**–Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | ✓ | | |
| 6. **ATTITUDE**–Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | ✓ | |
| 7. **COMMUNICATION**–Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | ✓ | | |
| 8. **ABILITY AS SUPERVISOR**–Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | ✓ | | |
| 9. **ADMINISTRATIVE ABILITY**–Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | ✓ | | |
| 10. **FACTORS NOT LISTED ABOVE** *(Use additional sheets if more space is needed.)* | | ✓ | | |
| **OVERALL RATING**–The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | ✓ | | |

**COMMENTS TO EMPLOYEE**–*(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).*

As your second Report of Performance for Probationary Employee evaluation indicates that your performance is less than "standard" on several Qualification Factors, an Employee Performance Improvement Plan (EPIP) is being initiated. The purpose of this EPIP is to define serious areas of concern, gaps in your work performance, reiterate California Department of Correction and Rehabilitation California Correctional Health Care Service expectations, and allow you the opportunity to demonstrate improvement and commitment.

Rater discussed report with employee  [x] YES  [ ] NO

I RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS (To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.)  [ ] YES  [x] NO

| RATER'S SIGNATURE | TITLE | DATE SIGNED |
|---|---|---|
| [signature] | Chief of Mental Health | 05/16/14 |

*In signing this report I do not necessarily agree with the conclusions of the rater.*

| EMPLOYEE'S SIGNATURE | DATE SIGNED | [ ] I would like to discuss this report with the reviewing officer. |
|---|---|---|

*I concur in the ratings given by the rater. I have made no change in this report.*

| REVIEWING OFFICER'S SIGNATURE | DATE SIGNED | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
|---|---|---|
| [signature] Andrew W. Deems | 5-16-14 | |

DISTRIBUTION Copies: 1 — Departmental Files  2 — Employee  3 — Supervisor  4 — Miscellaneous

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE
FOR PROBATIONARY EMPLOYEE**

STD. 636 (REV 8/2002) (REVERSE PAGE 2)

# INFORMATION ON PROBATIONARY REPORTS OF PERFORMANCE

1. The Report of Performance system is based on the principle that an employee should be kept informed of his/her supervisor's evaluation of his/her work. When a person is appointed as a probationary employee he/she is considered to be capable of Standard performance, and is presumed to have an initial overall performance rating of Standard. Thereafter, changes in his/her level of performance are shown by the Report of Performance. A probationary period of not less than six months or more than one year is required before permanent civil service status is attained; and reports must be prepared at the end of each one-third portion of the period. Additional reports may be prepared at any time during the probationary period.

2. The purpose of the Report of Performance is to help the supervisor and employee measure how well the employee is adapting to his/her job, and to provide a tool for guidance in training assignments, and granting of permanent civil service status.

3. The qualifications of each probationary employee, as demonstrated by his/her work performance, are rated on not less than five of the factors listed. Factors that do not apply are not rated. For example, Administrative Ability is not rated if the position does not have regular administrative responsibility. Any important qualification factors not listed in items 1 through 9 are described by the Rater and rated under item 10.

4. To indicate the rating on any factor, an "X" mark is placed in the appropriate rating column. (The location of the "X" in the rating column may be varied to give the employee a more precise indication as to his/her qualifications. When this is done, the farther the "X" is placed to the right the stronger the rating.)

5. If some significant aspect of the work is above or below the level indicated by the factor ratings, this may be pointed out by a statement in Comments to Employee. Where feasible, comments will also include suggestions as to how performance can be improved and suggestions regarding desirable training.

6. When the necessary skills or knowledge to do thoroughly satisfactory wor have to be acquired on the job, a rating of Improvement Needed on factors 1 c 2 on the First and Second report does not definitely indicate progress is nc satisfactory unless a statement as to unsatisfactory progress is made i Comments to Employee. On the Final Report, any rating of Improvemer Needed indicates progress has not been satisfactory.

7. Any rating of Unacceptable or an overall rating of Improvement Neede indicates progress has been unsatisfactory.

8. The Rater will discuss the report with the employee and give the employee copy. In signing the report, the employee merely acknowledges that he/she ha seen it. His/her signature does not indicate agreement. If he/she wishes to add written statement concerning any part of the report, he/she uses the Comment space. His/her comments are not considered a formal appeal from the report.

9. After the report is prepared, it is considered by the Reviewing Officer. If th Rater and Reviewing Officer do not reach agreement on the report, it is referre to the appointing authority or his/her representative. If any changes are made the report is not valid unless they are reported to the employee and recorded o his/her copy.

10. It is the duty of the appointing authority to reject any probationary employe who fails to demonstrate fitness for the position. In this event the appointin authority must give the employee written notice as prescribed in Governmen Code Section 19173. A Final Report of Performance may be prepared at tha time.

## DEFINITIONS OF RATINGS

**OUTSTANDING**– Performance on the job indicates qualifications are definitely superior—performance by the end of the probationary period can be expected to be well above the standard required of a competent permanent employee in that job. (If the overall rating is Outstanding, the Rater must give a written statement of factual substantiation for the rating. General statements such as "Outstanding in skill and knowledge" are not acceptable.)

**STANDARD**– Performance on the job indicates qualifications are thoroughly satisfactory—performance by the end of the probationary period can be expected to be up to, or somewhat above, the standard required of a competent permanent employee in that job.

**IMPROVEMENT NEEDED**– Performance on the job indicates qualification are somewhat inadequate—to reach the standard required of a competen permanent employee by the end of the probationary period, greater effort o training is needed.

**UNACCEPTABLE**– Performance on the job indicates qualifications are ver inadequate—special training, reassignment, or rejection may be advisable. (An factor or overall rating of Unacceptable must be substantiated by the Rater' written statement of specific reasons for each such rating.)

**THESE DEFINITIONS MUST BE USED IN MARKING THE PERFORMANCE FACTORS
AND IN ARRIVING AT THE OVERALL RATING.**

## APPEAL PROCEDURE

If the employee believes his/her rating is improper, he/she should discuss it with the Rater. If still not satisfied, he/she should sign the report and place an "X" in the space provided by his/her signature to indicate he/she wishes to discuss the report with the Reviewing Officer. An employee who wishes consideration in addition to the review by the Reviewing Officer and Rater should follow the grievance procedure of his/her agency.

An appeal to the Personnel Board for a formal hearing on a Report of Performanc can be made only on the basis that it has been used to abuse, harass, or discriminate against the employee and only after the departmental grievance procedure has beer exhausted. Such appeal must be filed with the Personnel Board in writing withir thirty days after the employee receives the departmental decision.

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE**
**FOR PROBATIONARY EMPLOYEE**

STD. 638 (REV 8/2002) (REVERSE PAGE 4)

# RATING THE QUALIFICATIONS OF A PROBATIONARY EMPLOYEE
### (INFORMATION FOR RATERS, REVIEWERS, AND APPOINTING AUTHORITIES)

## PURPOSE OF THE RATING

This is a progress report to the employee. In addition to letting the employee know how well he/she is doing his/her job, and helping the employee orient his/her efforts, it should be helpful to supervisors in:

(a) Making careful analysis of the employee's work.

(b) Making work assignments that will be to the best advantage of the employee and the organization.

(c) Determining the additional training needs of the employee.

(d) Determining whether the employee should be granted permanent status.

## DOING THE RATING

Soon after he/she comes to work, the probationer should be given a sample copy of this report and told of the standards of performance upon which his/her qualifications will be rated.

A Report of Performance may be prepared at any time during the probationary period. A report must be prepared for each probationary employee within ten days after the end of each one-third portion of his/her probationary period. If the employee is rejected during probation a final report may be prepared at that time.

Each department designates the Raters. Usually the immediate supervisor does the rating. Two or more supervisors may prepare the report together. All Raters sign the report. The Rater gives the employee his/her copy, and discusses it with the employee.

Only the qualification factors necessary for success in doing the duties of the position are rated. At least five factors must be rated. The examples listed after each factor are for illustration and explanation. They do not include every element that may properly be considered in rating the factor.

A person appointed with civil service status is presumed to have an initial overall performance rating of Standard. Thereafter, changes in his/her level of performance are shown by the Report of Performance. Probationary employees are rated on those factors that are of greatest significance in predicting success in the work, and on progress toward fully competent performance.

The ratings are defined as follows:

**OUTSTANDING**–Performance on the job indicates qualifications are definitely superior–performance by the end of the probationary period can be expected to be well above the standard required of a competent permanent employee in that job. (If the overall rating is Outstanding, the Rater must give a written statement of factual substantiation for the rating. General statements such as "Outstanding in skill and knowledge" are not acceptable.)

**STANDARD**–Performance on the job indicates qualifications are thoroughly satisfactory–performance by the end of the probationary period can be expected to be up to, or somewhat above, the standard required of a competent permanent employee in that job.

**IMPROVEMENT NEEDED**–Performance on the job indicates qualifications are somewhat inadequate–to reach the standard required of a competent permanent employee by the end of the probationary period, greater effort or training is needed.

**UNACCEPTABLE**–Performance on the job indicates qualifications are very inadequate–special training, reassignment, or rejection may be advisable. (Any factor or overall rating of Unacceptable must be substantiated by the Rater's written statement of specific reasons for each such rating.)

**COMMENTS**–Minimum requirements as to the use of comments to support Outstanding or Unacceptable ratings are explained above. Agencies may establish additional requirements. Comments should be made on any aspect of the employee's performance which has a significant influence on his/her effectiveness. Suggestions which may help the employee improve his/her performance should be made. They should be specific, and not merely refer to previous discussion or comments or previous reports.

**EMPLOYEE DISCUSSION**–Constructive discussion with an employee regarding his/her work performance and progress is an essential element of good supervision. The Report of Performance interview provides an excellent opportunity to review with the employee problems relating to his/her work, answer his/her questions, explain departmental or unit objectives or plans, and to develop better supervisor-employee understanding.

## THE REVIEWING OFFICER

The responsibilities of the Reviewing Officer include:

1. Keeping uniformity in the application of standards by the Raters under his/her direction.

2. Securing corrective action when bias or a misinterpretation of rating standards is evidenced in ratings.

3. Making sure reports are thoroughly and promptly prepared.

4. Discussing the report with the Rater or employee when requested, or otherwise appropriate.

5. Checking the statements made in support of Unacceptable or Outstanding to see that the reasons are specific, substantial and accurate.

The Reviewing Officer may discuss a report with the Rater and employee, but cannot change the report. If the Reviewing Officer recommends changes with which the Rater agrees, the Rater either makes the changes or prepares a new report. The changes are not valid unless the employee is notified and the changes are re-recorded on the employee's copy of the report.

If the Rater and the Reviewing Officer do not reach agreement, the matter is forwarded to the head of the department for decision. The department head may designate a different Rater and/or Reviewing Officer. The official report as finally effective must be signed by at least two persons who have been designated officially as the "Rater" and "Reviewing Officer," and who agree on all statements and ratings made in the report.

The Reviewing Officer signs the reports in which he/she concurs. All signed reports are transmitted as directed by the department. General reviews are made by administrative officials to see whether results in different units of the agency are logical and consistent.

## FILING OF REPORTS

Each agency files reports within the agency in the manner prescribed by the appointing authority of that agency. A report should be retained for three years if there is indication of punitive action.



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

# MEMORANDUM

| | |
|---|---|
| Date: | May 16, 2014 |
| To: | Christopher Wadsworth, M.D.<br>Chief Psychiatrist |
| From: | Eric E. Monthei, Psy.D.      Andrew W. Deems<br>Chief of Mental Health     Chief Executive Officer |
| Subject: | LETTER OF EXPECTATIONS |

This is to clarify your current position and current duties at San Quentin State Prison (SQSP), and provide additional direction regarding your current employment. If you have questions or concerns regarding this memo, please direct them to me as your direct supervisor, or in my absence, to Mr. Deems, CEO.

You are employed at San Quentin as its Chief Psychiatrist. On March 26, 2014, you requested a change of position to Senior Psychiatrist. The request was granted. However, it was later discovered that because you had not served as Senior Psychiatrist in the past--except in an acting capacity--you were ineligible to reinstate to that position. You were so advised so via memo signed by Mr. Deems on April 02, 2014, and issued to you by myself on the same date. Accordingly, you currently remain in the Chief Psychiatrist position. It has subsequently been determined that the State can accommodate your voluntary request to a Senior Psychiatrist position. To the extent that anything in the April 02, 2014, memo conflicts with this memo, the direction given in this memo prevails. Be advised that, to the extent it is consistent with SPB rules and policies, management will make every effort to assist you in making a change to any other available position, upon your request.

As Chief Psychiatrist, you are expected to fulfill the duties of that position. A copy of your duty statement is attached. Specifically, you are directed to focus on:

a. Calculated use of force evaluations consistent with policy and procedures.
b. Psychiatry coverage.
c. Functioning of the PsychOne Clinic.
d. MAPIP and QM psychiatric data tracking.
e. Compliance associated with 'spotlight' items.
f. Chart Audit compliance.
g. MHSDS ACA accreditation preparation.
h. RC, ML and ASU compliance measures (i.e. labs, AIMS, Consents, Orders, Formulary, Bus Medication, Bus Orders, etc.)

# MEMORANDUM

Additionally, this is to advise you that certain tasks are being redirected to other staff as follows, in order to assist you to successfully fulfill your responsibilities as the Chief Psychiatrist. Specifically, the following tasks are being redirected:

a. MHCB Medical Director.
b. Professional and/or administrative oversight associated with patient care for the Condemned Population at SQSP (i.e. PIP, ICF, SCCP, etc.)

During the last several weeks, you have raised concerns about your employment and your position at SQSP. You have sent emails regarding your concerns to coworkers. More recently, you have raised those concerns to management in CCHCS Headquarters (Diana Toche, Tim Belavich, Eureka Day, etc.), along with a request that they maintain your communications as confidential. These communications are inappropriate. It is unfair and inappropriate for you to ask Headquarters management to assist you with your employment concerns while asking that they not contact local management about those concerns.

Both Mr. Deems and I take the concerns that you have raised directly very seriously and have attempted to assist you in resolving your concerns, including attempting to resolve those issues directly with you and suggesting that you raise your concerns of reprisal to the Equal Employment Officer at SQSP. We understand that you have availed yourself of that opportunity.

We are aware that you have on multiple occasions sent unsolicited communications to coworkers about your employment issues. These numerous contacts are having a deleterious impact on the working relationships at San Quentin and cannot continue. Moreover, Managers at Headquarters have brought to our attention that you have raised concerns about your work situation directly to them. These are issues that should properly be addressed within San Quentin management through your official chain of command. Additionally, if you are not aware, you may obtain outside representation to assist you in seeking appropriate review of your employment conditions to the extent they are unsatisfactory to you. However, your actions in engaging the involvement of your coworkers and that of Headquarters management in resolution of your employment concerns are not appropriate. You are directed to cease using state equipment in an attempt to involve coworkers in your work issues because it is causing substantial workplace disruption. As has been demonstrated by referring you to the SQSP EEO Officer and by providing you with further contact information for the Headquarters EEO Office, SQSP management remains open to providing you every opportunity to resolve your issues in house or through appropriate outside avenues. Additionally, EAP services are available to you as well.

_____  
Eric E. Monthei, Psy.D  
Chief of Mental Health  

_____  
Andrew W. Deems  
Chief Executive Officer  

05/16/14  
Date

5-16-14  
Date

CALIFORNIA CORRECTIONAL  
HEALTH CARE SERVICES

California State Prison, San Quentin  
San Quentin, CA 94964

Exhibit 4a - Page 8


CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

*(handwritten margin note: "did not sign")*

# Employee Performance Improvement Plan (EPIP)
**Confidential**

**TO:** Christopher Wadsworth, M.D., Chief Psychiatrist
**FROM:** Eric E. Monthei, Psy.D., Chief of Mental Health
Andrew W. Deems, Chief Executive Officer
**DATE:** May 12, 2014
**RE:** Performance Improvement Plan (PIP)

The purpose of this Employee Performance Improvement Plan (EPIP) is to define serious areas of concern, gaps in your work performance, reiterate California Department of Correction and Rehabilitation California Correctional Health Care Service expectations, and allow you the opportunity to demonstrate improvement and commitment.

**Areas of Concern:**
- *Leadership Skills*
- *Administrative Knowledge*
- *Learning Ability*
- *Supervisory Ability*
- *Administrative Ability*

**Observations, Previous Discussions or Counseling:**
*Leadership Skills:*
Examples include, but are not limited to, failures that led to two verbal warnings and one counseling chrono. Specifically, on March 11, 2014, you arrived late to our standing MHSDS Management Meeting, were unprepared to discuss agenda items and spent the majority of the meeting distracted by portable electronic devices. Following that meeting, we met and I provided you with a verbal warning that you are to arrive to scheduled meetings no later than the start time and that you prepare for the content of the meetings beforehand.

On March 13, 2014, you arrived late to our standing MHSDS Management Meeting.

On March 19, 2014, there was a mandatory Suicide Prevention meeting. You arrived for the meeting approximately 20-minutes late, stayed for approximately 5-minutes while on your cell phone, then left the meeting. Additionally, you reported to have dismissed from attendance multiple teams absent clinical justification. Accordingly, on March 19, 2014, you were issued a counseling chrono outlining expectations associated with inappropriately dismissing staff from attending a mandatory meeting absent a clinical justification.

On March 20, 2014, we had a scheduled Suicide Autopsy. You arrived approximately 16-minutes tardy to the meeting and came unprepared to discuss any items contained within the proffered draft report. Following this meeting, you publicly stated, "...how can they do that? It would be nice if there was a forum to discuss what 'contributory' means..." In response, I publicly stated, "This was the forum." You responded, "oh."

On March 20, 2014, we met and I provided you with a final warning that you arriving to scheduled meetings late and being unprepared continues to be unacceptable. I further informed you that my warnings are being made for legitimate supervisory reasons and that your
Employee Performance Improvement Plan
Page 1 of 10
Exhibit 4a - Page 9



# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
# CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

performance is setting a bad example to the entire Management Team. You indicated that you understood.

In contrast, you have demonstrated an ability to complete unassigned tasks with vigor, enthusiasm and completeness.

*Administrative Knowledge:*
Examples include, but are not limited to, Sunday, March 23, 2014, you sent me an e-mail expressing your "confusion" (*see e-mail subject: "Re: HELP! – Allocation of inpatient beds: an update"*). Within this e-mail you express confusion that appears rather disingenuous and inconsistent with explicit information provided to you in ad nauseam during the course of your employment within the MHSDS at San Quentin State Prison.

Specifically, concerns about your role, responsibility, reporting relationship, etc. were explicitly discussed within our Mental Health Service Delivery Service (MHSDS) Management Meetings on: February 04, 06, 11, 13, 18, 20, 25 and 27, 2014, as we discussed plans associated with the allocation of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements. These plans and your role were further discussed during MHSDS Management Meetings on: March 04, 06, 11 and 13, 2014.

I was concerned that during many of the aforementioned meetings you expressed the same or similar concerns repetitively while indicating that you understood the direction each time. Specifically, in order to satisfy my concern:
- I took care to speak slowly, clearly and used simple English
- I provided you with substantive responses indicating EC had been reached
- Accommodation of Louder, Basic Speech was utilized, as was speaking clearly, and making sure that 'mouth was visible' in cases of hearing concerns
- Confirmation that EC was achieved or established was indicated by your answers to the information being provided and your acknowledgement that you did understand the information being provided to you by asking questions and summarizing information.

On Sunday, March 23, 2014, I responded to your e-mail by stating in part, "...I find your confusion astonishing. Nevertheless you report to me...Please consider this final clarity on an issue that we have previously discussed and that I have previously made explicit" (*see e-mail subject: "Re: HELP! – Allocation of inpatient beds: an update*).

*Learning Ability:*
Examples include, but are not limited to, the events on Monday, March 24, 2014, whereby you were provided with further direction to cease-and-desist from engaging in further communication specific to allocation of inpatient beds related to the Condemned Population and in conjunction with relevant court orders and/or agreements.

Approximately 68-minutes later, you sent another e-mail to executive staff at Headquarters attempting to explain your rationale for deviating from my previous direction.

You were once again provided with further direction to cease-and-desist from engaging in further communication specific to the allocation of inpatient beds related to the Condemned Population and in conjunction with relevant court orders and/or agreements. I was concerned

Employee Performance Improvement Plan                                                Page 2 of 10



**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

that minutes after providing you direction to cease-and-desist, you continued to disobey my direct orders. In order to satisfy my concern:
- I took care to speak slowly, clearly and used simple English.
- I provided you with substantive responses indicating EC had been reached.
- Accommodation of Louder, Basic Speech was utilized, as was speaking clearly, and making sure that 'mouth was visible' in cases of hearing concerns.
- Confirmation that EC was achieved or established was indicated by your answers to the information being provided and your acknowledgement that you did understand the information being provided to you by asking questions and summarizing information.
- Prior to ending this conversation, I simply stated, "Stop. I need you to Stop everything, do you understand what I am saying?" You replied, "yes, I do."

Approximately 29-minutes later you sent me an e-mail stating in part, "…you'll be included in all emails I send moving forward…" (*see e-mail subject: "Intentions"*).

You were once again provided with further direction that cease-and-desist from engaging in further communication specific to the allocation of inpatient beds related to the Condemned Population and in conjunction with relevant court orders and/or agreements does not mean to "…include [me] in all emails…moving forward…To the contrary, it means, Stop sending e-mails outside of your chain of command." I then returned to my office and sent you an e-mail stating, "Please direct any and all communication moving forward to my attention alone. Thank you." (*see e-mail subject: RE: Intentions*).

I was concerned that minutes after providing you direction to cease-and-desist, you continued to lay a foundation for disobeying my direct orders. In order to satisfy my concern:
- I took care to speak slowly, clearly and used simple English.
- I provided you with substantive responses indicating EC had been reached.
- Accommodation of Louder, Basic Speech was utilized, as was speaking clearly, and making sure that 'mouth was visible' in cases of hearing concerns.
- Confirmation that EC was achieved or established was indicated by your answers to the information being provided and your acknowledgement that you did understand the information being provided to you by asking questions and summarizing information.
- Prior to ending this conversation, I simply stated, "Stop sending e-mails outside of your chain of command, do you understand?" You replied, "Got it."

*Supervisory Ability:*
Examples include, but are not limited to, our Mental Health Service Delivery Service (MHSDS) Management Meetings on: February 04, 06, 11, 13, 18, 20, 25 and 27, 2014, whereby we discussed plans associated with the allocation of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements. These plans were further discussed during MHSDS Management Meetings on: March 04, 06, 11 and 13, 2014.

During many of the aforementioned meetings you expressed concerns with the discussed plans. In turn, each concern was discussed with you during our Management Meetings, smaller group meetings and on an individual basis. On March 14, 2014, you were informed: (1) that each of your concerns had been thoroughly discussed, (2) that we cannot continue to engage in



**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

discussing your repetitive concerns in ad nauseam, (3) that a decision had been made and (4) that it was expected that future time, energy and efforts moving forward are expected to be in support of the decision rendered.

On Friday, March 21, 2014, you sent me an e-mail stating in part, "…At the moment, we cannot accommodate any further admissions, but it's unlikely that we'll have a NAMH admission today…". This decision is contrary to our discussed plans associated with the allocation of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements.

Following this e-mail, we had a discussion in which I directed you to contact HCPOP and make arrangements for a MHCB to MHCB transfer as previously discussed. You indicated that you needed to be 'off-site'. I then directed a fellow supervisor to comply on your behalf given your unwillingness to follow direction, your inappropriate deviation from your official chain of command and your lack of compliance with agreed upon discussions. Alternate supervisory staff were able to efficiently and effectively implement the above direction associated with the allocation of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements with little effort.

<u>Administrative Ability:</u>
Examples include, but are not limited to, discussions, e-mails and dialogue taken out of context and presented in a skewed manner in order to impede departmental operations. Specifically, on Thursday, March 20, 2014, you informed me of an "…unplanned and informal discussion…" that you had with Mr. Deems, Healthcare CEO. You reported that you shared your concerns with Mr. Deems relating to discussed plans associated with the allocation of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements.

At that time, I reminded you that this item had been discussed in ad nauseam for over a month. Specifically, you were reminded that this was a topic of discussion during our Mental Health Service Delivery Service (MHSDS) Management Meetings on: February 04, 06, 11, 13, 18, 20, 25 and 27, 2014; as well as, March 04, 06, 11 and 13, 2014.

You were instructed to: (1) cease-and-desist from continuing this discussion and (2) not engage in further discussions or communications on this issue until such time as I had an opportunity to debrief Mr. Deems on the details of bed space specific to the Condemned Population and in conjunction with relevant court orders and/or agreements.

On Sunday, March 23, 2014, you sent an e-mail acknowledging the above instruction and explaining your rationale <u>in anticipation of deviating</u> from my instruction to you (*see e-mail subject: "NAMH plan/outline"*).

Later the same day, on Sunday, March 23, 2014, you sent an e-mail to Mr. Deems and I, that acknowledges the above instruction and then <u>actively deviates</u> from my instruction to you (*see e-mail subject, "Allocation of inpatient beds: an update"*). This e-mail contained two attachments (1) 12-page memo (*see e-mail subject: "Responsible & clinically-indicated allocation of existing inpatient MH beds"*) and (1) partial court order (*see attached 26 pages of a recent 28 page court order*). Within both the aforementioned e-mail and memo, you acknowledge the



# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
## CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

above instruction, actively deviate from that instruction and then explain your rationale for actively deviating from my previous instruction to you.

Later that same day, on Sunday, March 23, 2014, you sent me another e-mail acknowledging the above instruction and then explaining your rationale of <u>having deviated</u> from my instruction to you (*see e-mail subject: "NAMH"*). Within this e-mail you state in part, "I hope the tension I experienced by generating this memo was palpable... It was a struggle for me to voice a professional disagreement with you... I believe my wording and explanations were more-than-sufficient..."

Later that evening, on Sunday March 23, 2014, I forwarded the aforementioned communication to relevant stakeholders of these actions and that you had "explicit direction to the contrary" (*see e-mail subject: FW: Allocation of inpatient beds: an update*).

**Step 1: Improvement Goals:** These are the goals related to areas of concern to be improved and addressed:
1. <u>Leadership Skills:</u>
   Improved tracking and completion of assigned tasks.
   Be punctual to meetings and participate in a meaningful way.

2. <u>Administrative Knowledge:</u>
   Gain a better understanding of reporting and administrative structure.
   Improve understanding of differentiation between title and position.

3. <u>Learning Ability:</u>
   Demonstrate an ability to distinguish between professional advice, a supervisory request and supervisory instruction, direction, or order.

4. <u>Supervisory Ability:</u>
   Gain a better understanding of professional advice, supervisory requests, and supervisory instructions, direction or orders. Incorporate this new understanding within your active leadership.

5. <u>Administrative Ability:</u>
   Improve ability to effectively and efficiently implement a policy that you may disagree with on a personal, professional, clinical and/or administrative level.



## CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
## CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

**Step 2: Activity Goals:** Listed below are activities that will help you reach each goal:

| Goal # | Activity | How to Accomplish | Start Date | Projected Completion Date |
|---|---|---|---|---|
| 1. | a. Improved tracking and completion of assigned tasks.<br>b. Be punctual to meetings and participate in a meaningful way. | a. Develop a tracking sheet for assigned tasks and review tasks with your supervisor on an ongoing basis.<br>b. Prepare for all scheduled meetings in an appropriate manner to sufficiently participate and review any questions you may have beforehand with your supervisor on an ongoing basis.<br>c. Set a minimum of a 15-minute alert for all scheduled meetings.<br>d. Do not attend to any portable electronic devices or unrelated material during scheduled meetings. | a. 05/12/14<br>b. 05/12/14<br>c. 05/12/14<br>d. 05/12/14 | a. 05/19/14<br>b. Ongoing<br>c. Ongoing<br>d. Ongoing |
| 2. | a. Gain a better understanding of reporting and administrative structure.<br>b. Improve understanding of differentiation between title and position. | a. Seek supervision with you supervisor and review reporting and administrative structures until you are both satisfied that a mutual understanding has been reached. | a. 05/19/14 | a. Ongoing |
| 3. | a. Demonstrate an ability to distinguish between professional advice, a supervisory request and supervisory instruction, direction, or order. | a. Review these functions with your Chief of Mental Health.<br>b. Commit to writing your resulting understanding for CMH review. | a. 05/12/14 | a. Ongoing |



**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

| | | | | |
|---|---|---|---|---|
| 4. | a. Gain a better understanding of professional advice, supervisory requests, and supervisory instructions, direction or orders.<br>b. Incorporate this new understanding within your active leadership. | a. Engage in ongoing supervision regarding your management decisions and actions for a minimum period of 6-months. | a. 05/12/14 | a. Ongoing |
| 5. | a. Improve ability to effectively and efficiently implement a policy that you may disagree with on a personal, professional, clinical and/or administrative level. | a. Engage in ongoing supervision regarding your management decisions and actions for a minimum period of 6-months. | a. 05/12/14 | a. Ongoing |

**Step 3: Resources:** Listed below are resources available to you to complete your Improvement activities.

| | |
|---|---|
| 1. | The interdisciplinary MHSDS Management Team |
| 2. | Continuing Medical Education |
| 3. | Basic Supervisory Training, Advanced Supervisory Training and Effective Leadership Training |

**Management Support:**

| | |
|---|---|
| 1. | Ongoing supervisory review any questions you may have that will allow you to better prepare and participate in meetings. |
| 2. | Ongoing supervision regarding your management decisions and actions for a minimum period of 6-months. |
| 3. | Ongoing supervisory review of your reporting relationships and administrative |
| 4. | Ongoing supervisory review of your ability to distinguish between professional advice, a supervisory request and supervisory instruction, direction, or order. |

Employee Performance Improvement Plan                                               Page 7 of 10



**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

**Step 4: Expectations:** The following performance standards must be accomplished to demonstrate progress towards achievement of each Improvement goal:

| 1. | Ability to effectively and efficiently track assigned tasks. |
|---|---|
| 2. | Ability to effectively and efficiently complete assigned tasks by deliverable date. |
| 3. | Ability to arrive at meetings no later than their scheduled start time. |
| 4. | Ability to actively participate within meetings absent distractions and by preparing for the meeting content beforehand. |
| 5. | Ability to distinguish between professional advice, a supervisory request and supervisory instruction, direction, or order. |
| 6. | Ability to provide effectual leadership that incorporates related professional advice, supervisory requests, supervisory instructions, supervisory directions and/or supervisory orders. |
| 7. | Ability to effectively and efficiently implement a policy that you may disagree with on a personal, professional, clinical and/or administrative level. |

**Step 5: Progress Checkpoints:** The following schedule will be used to evaluate your progress in meeting your Improvement activities.

| Goal # | Activity | Checkpoint Date | Type of Follow-up (memo/call/meeting) | Progress Expected | Notes |
|---|---|---|---|---|---|
| 1. | a. Improved tracking and completion of assigned tasks.<br>b. Be punctual to meetings and participate in a meaningful way. | June 16, 2014<br>July 14, 2014<br>August 11, 2014 | Memo | Yes | N/A |
| 2. | a. Gain a better understanding of reporting and administrative structure.<br>b. Improve understanding of differentiation between title and position. | June 16, 2014<br>July 14, 2014<br>August 11, 2014 | Memo | Yes | N/A |
| 3. | a. Demonstrate an ability to distinguish between | June 16, 2014 | | | |

Employee Performance Improvement Plan                                  Page 8 of 10



**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

|   |   |   |   |   |   |
|---|---|---|---|---|---|
|   | professional advice, a supervisory request and supervisory instruction, direction, or order. | July 14, 2014<br>August 11, 2014 | Memo | Yes | N/A |
| 4. | a. Gain a better understanding of professional advice, supervisory requests, and supervisory instructions, direction or orders.<br>b. Incorporate this new understanding within your active leadership. | June 16, 2014<br>July 14, 2014<br>August 11, 2014 | Memo | Yes | N/A |
| 5. | a. Improve ability to effectively and efficiently implement a policy that you may disagree with on a personal, professional, clinical and/or administrative level. | June 16, 2014<br>July 14, 2014<br>August 11, 2014 | Memo | Yes | N/A |

**Follow-up Updates**: You will receive feedback on your progress according to the following schedule:

| Date Scheduled | Activity | Conducted By | Completion Date |
|---|---|---|---|
| June 11, 2014 | 30-day Update Memo | Eric E. Monthei, Psy.D., CMH | June 16, 2014 |
| July 10, 2014 | 60-day Update Memo | Eric E. Monthei, Psy.D., CMH | July 14, 2014 |
| August 08, 2014 | 90-day Status Memo | Eric E. Monthei, Psy.D., CMH | August 11, 2014 |

**Timeline for Improvement, Consequences & Expectations:**

Effective immediately, you are placed on a 90-day EPIP. During this time you will be expected to make regular progress on the plan outlined above. Failure to meet or exceed these expectations may result in appropriate disciplinary action.

Additionally, the contents of this EPIP are to remain confidential. Should you have questions or concerns regarding the content, you will be expected to follow up directly with me or with Mr. Deems, CEO.

We will meet again on as noted above to discuss your Employee Performance Improvement Plan. Please schedule accordingly.



# CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
## CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

**Signatures:**

Print Employee Name:  Christopher Wadsworth, M.D., Chief Psychiatrist

Employee Signature: _____     Date: _____

Print Supervisor Name:  <u>Eric E. Monthei, Psy.D., Chief of Mental Health</u>

Supervisor Signature: *[signed]*     Date: 05/16/14

Print Manager Name:  <u>Andrew W. Deems, Chief Executive Officer</u>

Manager Signature: *[signed] Andrew W. Deems*     Date: 5·16·14



Figure 3 - Timeline - Retroactive Allegations (May 2014).pdf

**March 23, 2014**

**M  1**

March 24, 2014 – May 16, 2014: Dr. Wadsworth's assignment to "Special Projects"

**2**

**May 16, 2014**

EPIP
Letter of Expectations
1st & 2nd Performance Evaluations

**3**

**March 11 – 21, 2014**

Numerous Allegations

(1)  **March 23, 2014:** Dr. Wadsworth completes the Memorandum, as requested, with Deems' authorization.

(2)  **May 16, 2014:** Eric Monthei and Andy Deems deliver multiple performance appraisals to Dr. Wadsworth. These documents allege that Dr. Wadsworth's suboptimal work performance began prior to the March 23, 2014 memorandum.

(3)  The **05/16/2014:** documents retroactively allege that Dr. Wadsworth had neglected his responsibilities on March 11, March 13, March 20, and March 21st.