UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEWART WADSWORTH, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY A. BEARD, et al., <br><br> Defendants. | Case No. 15-cv-02322-EMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br> Docket No. 79 |

Defendants' motion to enforce the Settlement Agreement with Dr. Wadsworth is **GRANTED** for the reasons stated on the record.

In sum, the text of the Agreement itself (Docket No. 59-1) supports Defendants' reading. Although Dr. Wadsworth's transfer from San Quentin to Folsom is enumerated in Section 3 as a form of "consideration" Defendants would offer to Dr. Wadsworth rather than under Section 2 discussing Dr. Wadsworth's obligations, the Agreement states that the CDCR "agrees to the following consideration" including to "transfer WADSWORTH to a Staff Psychiatrist position at Folsom State Prison, with a 4/10 schedule, effective January 1, 2018." Agreement § 3(e). Dr. Wadsworth claims that the language is unambiguously non-binding on him and was simply a form of consideration receipt of which he could freely waive. But the Agreement does *not* state that Defendants shall "provide WADSWORTH with the *option* to transfer" or "shall *permit* WADSWORTH to transfer *if he requests*." Instead it evidences the parties' agreement that Dr. Wadsworth *would* be transferred. Indeed, if the transfer were optional, one would expect the contract to say so explicitly; it would also have to set forth terms regarding how Dr. Wadsworth could exercise the option (*e.g.*, how long the option was open, what type of notice was required,

and so on). Moreover, as Defendants' counsel pointed out at the hearing, the provision is listed under Defendants' obligations because it was the CDCR, not Dr. Wadsworth, that would have to take action to effectuate the transfer. Dr. Wadsworth's interpretation of the Agreement is thus not supported by this text.

Even assuming the language was susceptible to more than one interpretation, however, the parol evidence supports Defendants' interpretation. *See First Nat'l Mortg. Co. v. Federal Realty Inv. Trust*, 631 F.3d 1058, 1066 (9th Cir. 2011) (courts are not limited to the four corners of a contract but may look to extrinsic evidence to determine whether a term is reasonably susceptible to more than one interpretation); *Wolf v. Sup. Ct.*, 114 Cal.App.4th 1343, 1351 (2004). Defendants introduced uncontested evidence that, in May 2017, the CDCR presented Dr. Wadsworth with two negotiation tracks: he could remain at San Quentin and receive a lesser amount of monetary consideration, or he could transfer to Folsom and receive 250% more consideration. Harlan Decl. ¶ 4. Dr. Wadsworth opted for the transfer track. *Id.* ¶ 5. He does not dispute he did so. *Morey v. Vannucci*, 64 Cal.App.4th 904, 912 (1998) (when extrinsic evidence is non-conflicting, court interprets contract as a question of law).[1] The two options presented during the negotiations clearly suggest that CDCR placed a value on Dr. Wadsworth's agreement to transfer to Folsom. It makes no sense that Defendants would offer Dr. Wadsworth more money to transfer to Folsom *and* make the transfer optional, without reducing the money in event Dr. Wadsworth decided to stay.

Defendants' interpretation is also supported by the parties' subsequent conduct. *Morey*, 64 Cal.App.4th at 912 (court may look to subsequent conduct as evidence of parties' intent at time of

---

[1] Dr. Wadsworth claims that between June 2016 and May 2017, he accepted a lesser total sum of money in exchange for removal of a confidentiality provision and changes to language that had stated he "shall voluntarily demote" to another position. Wadsworth Decl. ¶¶ 4-5. But this does not change the fact that there was a differential in compensation between San Quentin and Folsom in May 2017. Moreover, the removal of the earlier draft language does not indicate that the transfer transformed from mandatory to optional. With respect to the earlier draft text using the term "shall voluntarily," as the Court pointed out at the hearing, "shall voluntarily" is somewhat of a contradiction in terms, as "shall" connotes a binding obligation whereas "voluntarily" suggests the opposite. Thus, that the earlier draft uses the word "voluntarily" would not have made the transfer less binding on Dr. Wadsworth given the use of the term "shall." The term "voluntarily" likely referred to the fact that the agreed upon transfer was not an involuntary transfer which would have had certain legal ramifications (*e.g.*, relative to the CBA – see below).

2

agreement). Both parties acted consistent with the assumption that Dr. Wadsworth had agreed to transfer to Folsom. The CDCR arranged for his final day at San Quentin, for his new employee orientation in Folsom, and for his paid and unpaid administrative leave. Dr. Wadsworth stopped working at San Quentin upon his last day as planned. This subsequent conduct is also more consistent with Defendants' interpretation than Dr. Wadsworth's. It was only after subsequent changed circumstances did Dr. Wadsworth have a change of heart. Indeed, Dr. Wadsworth admitted that he voluntarily agreed to transfer to Folsom at the time of the Agreement.[2] Opp. at 2. He states that only subsequent to the Agreement did he have second thoughts and try to back out of the transfer. *Id.*

Dr. Wadsworth argues that the transfer violates his Collective Bargaining Agreement because this was an involuntary transfer. But his entering into the Settlement Agreement was voluntary. *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties *as it existed at the time of contracting*[.]") (emphasis added).

Finally, Dr. Wadsworth requested leave to submit further parol evidence in support of his interpretation at the hearing. As explained on the record, the Court denied Dr. Wadsworth's request because he and Defendants both had a full opportunity to submit evidence in connection with their briefs and he has no right to reopen the record. In any event, he did not specifically identify any evidence he would seek to introduce.

This order disposes of Docket No. 79.

**IT IS SO ORDERED**.

Dated: January 4, 2018

_____
EDWARD M. CHEN
United States District Judge

---

[2] For this reason, even if it is true that the Agreement merely contemplated an option to transfer to Folsom, Dr. Wadsworth—by agreeing to exercise the option—was thereafter bound to do so. *See Torlai v. Lee*, 270 Cal.App.2d 854 (1969) ("although [ ] an option may not be mutual at the outset, when exercised it assumes the character of a *bilateral* contract and is *mutually* enforceable.") (emphasis added)

3