UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEWART WADSWORTH,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFREY A. BEARD, et al.,<br><br>    Defendants. | Case No. 15-cv-02322-EMC<br><br>**ORDER DENYING TRO**<br><br>Docket No. 91 |

## I.  INTRODUCTION

Before the Court is Plaintiff's *ex parte* Motion for a Temporary Restraining Order (TRO). Docket No. 91. The Court ordered Defendants to file an opposition, Docket No. 94, and they did, Docket No. 99; thus, the Court treats this motion as a regular fully-briefed TRO, and not *ex parte*.[1]

The Court **DENIES** Plaintiff's TRO. The Court will hear Plaintiff's Motion to Enforce Settlement on **July 17, 2025 at 1:30 PM**. As Defendant CDCR has already submitted an Opposition at Docket No. 99, Plaintiff shall file a reply in support of his Motion to Enforce Settlement by **Thursday, July 3, 2025**.

## II.  FACTS AND BACKGROUND

Plaintiff and Defendants entered into a settlement agreement in June 2017 which released Defendants of all of Plaintiff's claims. Docket No. 59-1 ("Settlement Agreement"). The Parties stipulated to a dismissal with prejudice against all defendants, but this Court retained jurisdiction "for the sole purpose of, and for only as long as necessary to ensure compliance with the terms of

---

[1] Attorney for Defendant J. Clark Kelso individually and in his capacity as Receiver filed an Opposition noting this TRO is not relevant to him. The Court agrees.

1  the June 2017 Settlement Agreement and Release by the parties." Docket No. 64. The Settlement

2  Agreement does not appear to have an end date.

3  Plaintiff states he was notified via letter dated June 18, 2025, of Defendant California

4  Department of Corrections and Rehabilitation's ("CDCR") intent to terminate him via an Absent

5  Without Official Leave ("AWOL") termination set for June 27, 2025. *See* Exhibit G. Plaintiff

6  claims he was unaware of this until June 23, 2025. Plaintiff filed the present TRO on Wednesday,

7  June 25, 2025.

8  The settlement agreement required CDCR, amongst other provisions, to "transfer

9  [Plaintiff] to a Staff Psychiatrist position at Folsom State Prison, with a 4/10 schedule, effective

10  January 1, 2018." Settlement Agreement, Section 3e. This Court has previously found the terms

11  of Section 3e "clear and unambiguous" in its January 4, 2018 Order. *See* Docket No. 84.

12  ("[Section 3e] evidences the parties' agreement that Dr. Wadsworth would be transferred.")

13  Plaintiff claims that beginning in February 2024, he was placed on a schedule and in

14  positions (in the mailroom) that did not follow the settlement agreement—working 5 days/week.

15  He further states that he repeatedly raised this violation with CDCR.

16  It appears Plaintiff was on Administrative Time Off and was able to avail himself of some

17  form of FMLA leave. *See* Exhibit C (excerpt below). Plaintiff does not explain why this took

18  place.

> The current expectation is that you proceed with the directions outlined in the *Termination of Administrative Time Off –Notice of Temporary Redirection of Work Assignment* letter, which was mailed to you on February 14, 2024 and a courtesy copy emailed to you on February 16, 2024.
>
> Thank you for informing us of your upcoming leave, we will notate the FMLA leave on Friday February 23, 2024 and the FMLA leave on Monday February 26, 2024. Please follow the guidelines outlined in the *Termination of Administrative Time Off – Notice of Temporary Redirection of Work Assignment* letter for future leave requests.

**Exhibit C, Defendant's email to Plaintiff dated February 20, 2024.**

Plaintiff raised an issue with his new position and work schedule being in violation of the Settlement Agreement. *See* Exhibits C, D (excerpts below):

2

> To highlight the damages incurred by the explicit violation of the Agreement: In order to help my ailing mother with her chronic medical needs, I have spent nearly every weekend in Florida, returning to California on Monday evenings (as Monday had been my assigned RDO, in addition to Sat/Sun). By violating the Agreement, I will be newly required to utilize weekly leave hours (and their associated monetary value). This ongoing financial harm-- which began today--would not have occurred if FSP leadership had not explicitly violated the extant Settlement Agreement, and maintained their intent to violate the Agreement, by having issued the latest work schedule that maintains the ongoing violation.
>
> Please let me know if this violation can be immediately remedied, thus averting the need to file a motion to compel (which has already been prepared), and averting the need to return to court. The remedy--and lawful compliance with the Agreement--is remarkably simple/straightforward, and I can't imagine why anyone would resist complying with the extant terms/conditions.

**Exhibit C, Email from Plaintiff to Defendants, dated February 26, 2024.**

Defendants responded to Plaintiff that the Settlement Agreement did not apply to Plaintiff while he was working in the Mailroom, and not as a Staff Psychiatrist. *See* Exhibit D (excerpt below):

> In addition, The Termination of Administrative Time Off-Notice of Temporary Redirection of Work Assignment letter (Termination of ATO letter) does not violate the terms of the legal settlement, as the alternate work week schedule 4/10/40 applies when you are performing your duties as a staff psychiatrist, with approval from management. Since you are being redirected to the FSP Mailroom, your alternate work schedule is not appropriate, as the operational needs of the Department and FSP Mailroom require you to report at 6:00a.m. to 2:00p.m., Monday through Friday.

**Exhibit D, Email from Defendant's CEO to Plaintiff, dated November 21, 2024.**

Through the evidence Plaintiff presented, it also appears that Plaintiff, as of May 5, 2025, was not in compliance with the requirements for retaining a Staff Psychiatrist position. *See* Exhibit E (excerpt below). Plaintiff does not explain this.

> Work schedule may be adjusted once you report back to work and complete the necessary tasks (ID, IST, LMS, Credentialing, etc) to participate as a Staff Psychiatrist.

**Exhibit E, Defendant's email to Plaintiff dated May 5, 2025.**

In Defendant's Termination Letter, Defendants' reason for the AWOL termination was

Plaintiff's absence without leave for 5 consecutive days. *See* Exhibit G (excerpt below):

> Please take notice that effective close of business June 27, 2025, the California Department of Corrections and Rehabilitation, California Correctional Health Care Services, intends to invoke the AWOL statute (Government Code Section 19996.2) because you have been absent without leave for five or more consecutive working days. You have been absent from June 11, 2025, through June 17, 2025, and that absence was without approved leave.
>
> If you disagree with these facts, you may request an informal "Coleman" hearing to be held and completed prior to the close of business on June 27, 2025. At the hearing you will have an opportunity to explain to an impartial departmental representative why you disagree with the Department's intent to invoke the AWOL statute.

**Exhibit G, AWOL Termination Letter from Defendants to Plaintiff, dated June 18, 2025, sent via overnight and electronic mail.**

Plaintiff then responded to this email, informing Defendants he was contesting the underlying facts of the termination, and requested a Coleman hearing. *See* Exhibit H (excerpt below). The Court is unaware whether this hearing has or will occur.

> Yes, I disagree with the facts contained within the email attachment to Ms. Grijalva's email (while also noting that I never received the mailed copy that the POS asserts had been sent to my home address); and request the Coleman hearing to be completed prior to COB on June 27, 2025. Please let me know when/where this hearing will occur.

**Exhibit H, Plaintiff's email response to Defendants dated June 24, 2025 regarding the AWOL Termination Letter.**

Plaintiff seeks the following in his TRO, *see* TRO at 8-9:
> • **Issue a temporary restraining order** prohibiting CDCR from proceeding with the scheduled AWOL termination on June 27, 2025;
> • **Order CDCR to maintain/restore** Plaintiff's employment status, financial compensation including backpay, and benefits pending resolution of the motion to enforce settlement agreement;
> • **Restore the 4/10 work schedule** as required by the settlement agreement during the pendency of these proceedings;
> • **Set an expedited hearing** on Plaintiff's motion for preliminary injunction;
> • **Award reimbursement** for personal leave hours and associated compensation lost as a result of CDCR's noncompliance since February 2024;

• **Award such other relief** as the Court deems just and proper.

### III.  LEGAL STANDARD

A plaintiff seeking a TRO "must establish that [plaintiff] is likely to succeed on the merits, that [plaintiff] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [plaintiff's] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). "The first factor under *Winter* is the most important," to the extent the court need not consider the remaining three elements where a plaintiff fails to show a likelihood of success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citations omitted).

Courts within the Ninth Circuit may also consider a request for a temporary restraining order using a "sliding scale" approach in which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). "[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *Alliance for the Wild Rockies*, 632 F.3d at 1135). Where, as here, the Government is a party, the last two factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

### IV.  DISCUSSION

A.  Irreparable Harm

The loss of employment does not normally constitute irreparable harm if "the temporary loss of income" can ultimately be recovered. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("[G]iven the court's equitable powers to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury."). Irreparable harm is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz.*

5

*Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Plaintiff fails to detail or outline any harm that could not be remedied through a legal remedy. Thus, this factor weighs against the TRO.

B.  Balance of Hardships

Plaintiff has an interest in the terms of the 2017 Settlement Agreement being enforced. However, as to the TRO, Plaintiff has failed to connect his AWOL Termination to the Settlement Agreement. The Court notes that Plaintiff alleges Defendants have been out of compliance for over a year— if Plaintiff had a concern of imminent harm, Plaintiff could have come to the Court sooner. The Court also notes that Plaintiff has legal rights under California law regarding AWOL Terminations and appears to be able to seek those. On the other hand, Defendants have an interest in their staff maintaining compliance with the applicable certifications and requirements, and with their staff reporting for work when required to do so. Defendants also have a strong interest in seeking the termination of employees who fail to do so. Thus, the balance of hardships does **not** tip sharply in Plaintiff's favor.

C.  Likelihood of Success on the Merits

Plaintiff argues that but for Defendant's lack of compliance with the Agreement, he would not be subject to an AWOL termination and would not have lost out on using his paid leave benefits to account for missed days. By the terms of the AWOL, it appears Plaintiff was absent 5 consecutive days, "from June 11, 2025, through June 17, 2025, and that absence was without approved leave." AWOL Termination Letter. Additionally, Plaintiff submitted evidence that as of at least May 5, 2025, he was out of compliance with the qualifications required to be a Staff Psychiatrist. The grounds of Plaintiff's AWOL termination appear to be unrelated to the 4/10 clause of the Settlement Agreement.

The Settlement states that Defendants would:

> e) transfer WADSWORTH to a Staff Psychiatrist position at Folsom State Prison, with a 4/10 schedule, effective January 1, 2018.

1  *See* Settlement Agreement, Section 3e. As to the merits of the meaning of Section 3e, Plaintiff and Defendants offer different meanings of this term. Defendants argue Plaintiff appears to misinterpret the Settlement Agreement—arguing that he was entitled to be staffed as a Staff Psychiatrist on a 4/10 (4 days per week, 10-hour shift) schedule *"*in all circumstances including the event he was to fall short of professional training and licensing requirements." Opp. at 2. Defendant further argues Section 3e required CDCR only to transfer Plaintiff in 2018 with the 4/10 schedule, and that the obligation under Section 3e ceased upon that moment.

Plaintiff, on the other hand, argues he was entitled to this schedule while he was employed, and the Settlement Agreement does not appear to have any time limit. *See* Exhibit C ("As you may recall, our 2017 Agreement explicitly indicated that I would maintain a 4-day/10-hour work-schedule."). Thus, the Court will retain jurisdiction over the Motion to Enforce Settlement to resolve the Parties' dispute as to Section 3e's meaning.

D.   Public Interest

In California, there is a strong public policy in favor of enforcing settlement agreements. *Caramo v. Vacation Interval Realty Inc*., 2014 WL 12576802, at *2 (C.D. Cal. Aug. 19, 2014) (citing *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1357 (2007); *see also MWS Wire Indus., Inc. v. California Fine Wire Co*., 797 F.2d 799 (9th Cir. 1986) ("Promotion of ["public interest in settling litigation"] requires judicial enforcement of settlement agreements.") (internal citations omitted). However, here, the present TRO regarding the AWOL Termination appears disconnected from the Settlement Agreement. Thus, this factor weighs against the granting of the TRO.

//
//
//
//
//
//

|   |   |
|---|---|
| 1 | **V.     CONCLUSION** |
| 2 | Plaintiff's TRO is **DENIED**. |
| 3 | The Court will hear Plaintiff's Motion to Enforce Settlement on **July 17, 2025 at 1:30 PM**. |
| 4 | As Defendant CDCR has already submitted an Opposition at Docket No. 99, Plaintiff shall file a |
| 5 | reply in support of his Motion to Enforce Settlement by **Thursday, July 3, 2025**. |

**IT IS SO ORDERED**.

Dated: June 26, 2025

_____
EDWARD M. CHEN
United States District Judge

8